PHOENIX GLASS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8570, 16798.   Promulgated April 30, 1927.

> The Board is not warranted from the evidence in this proceeding in holding that the Commissioner erred in his determination of a reasonable allowance for exhaustion, wear and tear, and obsolescence of the property used in the petitioner's business.

*Ben Jenkins, Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

The Commissioner determined deficiencies in income and profits tax for the fiscal years ended June 30, 1920, and June 30, 1922, in the amounts of $27,971.65 and $2,403.38, respectively.

The errors assigned by the petitioner are: (1) The failure of the Commissioner to make a reasonable allowance for depreciation on machinery and equipment, 8 per cent being allowed by the Commissioner and 12½ per cent being claimed by the petitioner, and (2) the failure of the Commissioner to restore to petitioner's invested capital certain amounts which were charged off by the petitioner on account of obsolescence, but which deductions were disallowed by the Commissioner and not restored to invested capital for the succeeding year or years.

FINDINGS OF FACT.

The petitioner is a West Virginia corporation with its principal office at Pittsburgh, Pa., and is engaged in the manufacturing of illuminating glassware at Monaca, Pa., where it occupies a plant covering eight acres along the Ohio River.

Upon the books of the petitioner there is no segregation of the values of the various classes of machinery and equipment, but the Commissioner fixed a value of $506,361.99 as at January 1, 1917, which, with subsequent additions and retirements, furnishes the values upon which depreciation was computed for the years involved, and this has been accepted by the petitioner.

The petitioner, during the years involved, operated its factory on a union basis, i. e., four shifts of from four to four and one-half hours each, with a short time intervening between each shift, but making a total of approximately 17 hours per day. The heat of the furnaces is maintained at 2,500 degrees unless it is determined to close down for a period of several weeks.

The silicates used in the manufacture of glass are particularly abrasive, as the edges of the crystals have not been worn smooth. This abrasion accelerates the depreciation of the batch-mixing machines used in mixing the raw materials.

From the batch-mixing machines, the raw material is transferred to the furnaces, where it is melted under a heat of 2,400 degrees Fahrenheit. The molten glass is then blown by hand-mold and machine-mold processes. These molds are of cast iron and are heated before being used. From the mold, the glass is placed in the lehr where it is annealed under a heat of from 950 degrees to 1,150 degrees Fahrenheit. In these lehrs certain machinery moves the ware through the length of the oven.

From the lehrs the glassware goes to the grinding machine where the rough edges are removed, carborundum being used as the abrasive. From these machines some of the glassware goes to sand-blasting machines where sand is the abrasive, being discharged against the ware under high pressure. There is a dust from these sand-blasting machines which accelerates depreciation of machinery and equipment with which it comes in contact, affecting particularly the sand-blasting machinery, air compressors and fans.

The "hard" quality of the water used in boilers tended to decrease their normal life.

During the fiscal year ended June 30, 1920, the petitioner made many changes in its plant, installing new and, what it considered, improved machinery and adding new units of equipment.

In the three years preceding the fiscal year ended June 30, 1920, depreciation was allowed on machinery and equipment by the Commissioner at the rate of 8 per cent. No depreciation was taken on petitioner's books prior to 1917, though when the Commissioner sought to adjust asset values at the beginning of the first year in which invested capital was involved, at the same rates as for 1917 and subsequent years, this was protested by the petitioner and a lower rate was finally allowed.

OPINION.

LITTLETON: The principal question on which the petitioner presented evidence was as to the correct rate of depreciation for the machinery and equipment. The assistant general manager, who has charge of construction and maintenance work was the only witness as to this feature. He has been with the petitioner since 1915 and showed a detailed knowledge of the principal feature of the plant and of the factors which enter into depreciation.

No segregation could be furnished of the depreciable assets which entered into the total on which a depreciation rate of 12½ per cent was claimed, though he testified as to his opinion of the life of various units and machines. On several major items he testified that their average life was 8 years, though this was qualified in some instances by the statement that new machines, e. g., batch-mixing machinery installed in 1920 were still in use and, therefore, no accurate estimate of their probable life could be given. In the case of furnaces an average life of 8 years was given, but this was qualified by the statement that the principal factor was obsolescence. In many other instances, obsolescence was considered as an important factor, since new machinery was continually being perfected which made it necessary to discard the old machinery. No evidence was furnished, however, to the effect that the date when it would be necessary to abandon equipment could be anticipated.

Other units were given a life of from 10 to 15 years, and two items, molds and air-compressor equipment, were given a life of 5 years. Molds are manufactured in the plant and the witness stated that they represented a value of not less than $85,000.

We are of the opinion that the above evidence is insufficient to overcome the Commissioner's determination of a rate of 8 per cent. We are satisfied that there are units among the petitioner's machinery and equipment, the useful life of which is shorter than 12½ years, and, likewise, some the life of which is much longer. Our difficulty lies in determining with any approximate degree of certainty the probable life of the various units and, even if we had the probable life, our problem is further complicated by the fact that we have no segregation of assets to which we could apply the respective rates to determine whether the depreciation as allowed by the Commissioner was reasonable.

We are also satisfied that obsolescence is an important factor in determining the commercial usable life of the assets in question. On more than one class of these assets the witness stated that the assets were discarded because they were obsolete and not because their useful life was exhausted due to wear and tear. But again petitioner's evidence is insufficient on which to give consideration to this factor. We said in the *Appeal of Columbia Malting Co.*, 1 B. T. A. 999:

In order that the taxpayer may be entitled to the obsolescence deduction in the years involved, there must have been substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and second, it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. The purpose of the statute is to permit the capital invested in assets to be returned to a taxpayer out of earnings over the life of the property in the business. A reasonable deduction is allowed on account of the exhaustion, wear, and tear of property. This includes obsolescence, if the property is becoming obsolete, so that by the time it reaches that state the entire cost thereof will be restored. While it is known that physical property is ordinarily subject to exhaustion, wear, and tear from use in the business, it may not be known that it is also becoming obsolete. Whether it is, is a question of fact in each case. When it is found that property is becoming obsolete, a deduction on that account can only be determined by ascertaining, as accurately as possible, when the property may be expected, under the circumstances, to be no longer commercially useful notwithstanding its physical condition. In the case of a deduction on account of exhaustion, wear and tear of property used in the business, if it can not be determined that the property is subject to wear, tear, and exhaustion, or what the approximate life of the property, under all the facts and circumstances, is, there is no basis for determining the deduction. With respect to obsolescence, if it can not be determined that the assets will become obsolete prior to the estimated date of the physical exhaustion thereof, or if a reasonably definite date can not be ascertained, there are no means of determining what is a reasonable allowance on that account.

See also *Appeal of Crown Margarin Co.*, 1 B. T. A. 1110, and *Corsicana Gas & Electric Co.* v. *Commissioner*, 6 B. T. A. 565.

In testifying as to furnaces, the witness said: "It would be, it seems to me, very fair to strike an average of about eight years for the life of a furnace. That would be about the average. You can't say that definitely for one style or another. You never know when something is going to come along making it necessary to change your style of furnace." Without more definite information, the factor of obsolescence can not be given much weight.

Another feature which can not be overlooked is the fact that the petitioner took no depreciation on its books prior to 1917 and that when the Commissioner attempted to apply the rate of 8 per cent in determining the depreciation reserve, protest was made by petitioner on the ground that this rate was excessive and it finally convinced the Commissioner of that fact, and in computing the depreciation reserve the Commissioner finally allowed a lower rate than 8 per cent. True, depreciation is a question of fact and must be determined in the light of facts known and existing in the years under consideration, but we feel that this is an evidentiary fact that should be considered in arriving at a decision of the issue presented since the witness who testified based his conclusions on the history of the plant from 1915 to the present time.

We are of the opinion, based on the entire record in the case, that insufficient evidence has been introduced to warrant a finding that a greater rate of depreciation has been suffered on the petitioner's machinery and equipment than that allowed by the Commissioner and his determination in this regard is therefore approved.

A further contention advanced by the petitioner is that when the Commissioner made certain disallowances of items which it charged off on account of obsolescence, he failed to restore these items to invested capital for the year or years affected thereby. The Commissioner concedes that if this has not been done, it should have been done and, therefore, it becomes a question of fact as to what was done.

The first item is $10,287.64 for obsolescence of molds which was disallowed as a deduction from income in the fiscal year ended June 30, 1919. We do not find where this specific item was restored to invested capital for the subsequent year, but we do find an increase of approximately this amount from 1919 to 1920 in a restoration entitled "Restoration to assets due to amounts being arbitrarily written off on account of appraisal."

The second item is $64,887.66, similarly disallowed in 1920, and no restoration of this specific amount to the invested capital for 1921, though we do find an increase in the account referred to under the previous item of but little less than the amount charged off. The difference in each instance might be accounted for by depreciation.

Since it may be a mere coincidence that other items which were restored were almost identical in amount with those in question and since the deficiency letters do not specifically show the restoration of these items, this matter will be determined under Rule 50, since both parties agree that if the amounts in question have not been restored to the invested capital of the appropriate years such restoration should be made.

*Judgment will be entered on 10 days' notice, under Rule 50.*